UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATE OF NEW YORK, and BASIL SEGGOS, as COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>VILLLAGE OF NORTHPORT,<br><br>　　　　　　　　　　Defendant. | CIVIL ACTION NO.<br>2:20 CV-890<br>(　　　　, J.)<br>(　　　　, M.J.)<br><br>**COMPLAINT** |

The United States of America ("United States"), by and through its attorney Richard P. Donoghue, United States Attorney for the Eastern District of New York, acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of New York ("New York" or the "State") and Basil Seggos, as Commissioner of the New York State Department of Environmental Conservation ("NYSDEC"), by and through their attorney, Letitia James, Attorney General for the State of New York, Abigail Rosner, of counsel, allege as follows:

## NATURE OF THE ACTION

1. This is a civil action brought against the Village of Northport ("Northport") pursuant to Sections 309(b) and (d) of the Clean Water Act ("CWA" or the "Act") 33 U.S.C. § 1319(b) & (d), for injunctive relief and assessment of civil penalties for unauthorized, illegal and persistent discharges of pollutants and other violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and the four permits ("Permits") issued by NYSDEC, as authorized by EPA under Section 402(b) of the CWA, 33 U.S.C. §1342(b), for the municipal separate storm sewer system ("MS4") owned and operated by Northport.

2. The State of New York is being joined in this action as a plaintiff with respect to the violations of the CWA alleged in this action under Section 309(e) of the Act, 33 U.S.C. § 1319(e).

3. The State of New York also brings this action to address violations of Article 17 of the New York Environmental Conservation Law ("N.Y.E.C.L.").

4. From at least the date of EPA's Compliance Evaluation Inspection in June 2011, Northport's MS4 discharged illicit contaminants, including raw sewage, into Northport Harbor, which flows into the Long Island Sound. These illegal discharges resulted from Northport's failure to comply with the Clean Water Act MS4 permit requirements, including its obligation to protect water quality by developing and enforcing a program to eliminate the discharge of unpermitted pollutants from its storm sewer system. Specifically, Northport had long violated the requirement that it implement and enforce a program to detect and eliminate illicit pollutants going *into* its MS4, so as to prevent those pollutants from travelling through the storm sewers and being discharged *out of* the storm sewers and into the waters of the United States and the State. Northport also violated related program and reporting requirements.

5. Northport's actions violated the Clean Water Act, the New York Environmental Conservation Law, and the "general permit" applicable to MS4s such as Northport's. Northport also failed to comply with three administrative orders issued by EPA to compel Northport to come into compliance.

6. The United States brings this action to compel Northport to comply with the Clean Water Act, including the general permit governing Northport's MS4, and EPA's administrative orders, and to recover civil penalties for Northport's violations.

7. New York brings this action to compel Northport to comply with the New York Environmental Conservation Law and the general permit governing the Northport's MS4, and to recover penalties for Northport's non-compliance to date.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the claims of the United States under 28 U.S.C. §§ 1331, 1334, and 1345, and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b). The Court has supplemental jurisdiction over New York's claims under 28 U.S.C. § 1367.

9. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1395 because the violations alleged below arose in the Eastern District of New York and because the defendant Northport is located in this district.

## THE PARTIES

10. Plaintiffs are the United States, on behalf of the Administrator of the EPA, the State of New York, and Basil Seggos, as Commissioner of the NYSDEC.

11. Defendant is the Village of Northport. Northport is a municipal corporation duly chartered under the laws of the State of New York, located in Suffolk County. Northport borders Northport Harbor and Northport Bay, which empty into the Long Island Sound.

12. Northport's principal place of business is located at 224 Main Street, Northport, New York 11768 in the County of Suffolk.

13. Northport is a "municipality" and a "person" within the meaning of Section 502(4) and (5) of the Clean Water Act, 33 U.S.C. §§ 1362(4) and (5), and N.Y.E.C.L. §§ 1-0303(1) and (18) and 17-0105(1).

## STATUTORY AND REGULATORY BACKGROUND

### *The Clean Water Act and State Law Discharge Prohibitions*

14. The purpose of the Clean Water Act is to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this end, the statute generally prohibits "the discharge of any pollutant by any person," except when done in compliance with other sections of the Clean Water Act. 33 U.S.C. §§ 1311(a), 1342. The term "discharge of pollutants" includes "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). The term "pollutant" includes "sewage." 33 U.S.C. § 1362(6).

15. N.Y.E.C.L. Article 17, entitled "Water Pollution Control," declares that the public policy of New York is to "require the use of all known available and reasonable methods to prevent and control the pollution of the waters of the state of New York." N.Y.E.C.L. § 17-0101. Consistent with this public policy, it is "unlawful to discharge pollutants to the waters of the state from any outlet or point source" except when done in compliance with a NYSDEC-issued permit, and unlawful to discharge pollutants in excess of the limits set by such a permit. *Id.* § 17-0803.

### *NPDES Permits*

16. The principal Clean Water Act program authorizing the discharge of pollutants is the National Pollutant Discharge Elimination System ("NPDES") permit program established by Section 402 of the Clean Water Act. 33 U.S.C. § 1342(a).

17. A NPDES permit authorizes the discharge of pollutants subject to various terms and conditions designed to ensure that the discharges remain consistent with the Clean Water Act's objectives of restoring and maintaining the integrity of the waters of the United States.

18. In most cases, as permitted by Section 402(b) of the CWA, states have elected to administer the NPDES program within their jurisdiction. 33 U.S.C. § 1342(b). New York has been authorized by EPA to administer the program in the State since October 28, 1975, and NYSDEC is the agency charged with administration of the New York State NPDES program. NPDES permits issued and administered by NYSDEC are referred to under state law as State Pollutant Discharge Elimination System ("SPDES") permits. N.Y.E.C.L. § 17-0105(13).

19. EPA is authorized to issue administrative orders requiring municipalities to comply with the conditions and requirements of a NPDES permit (including a SPDES permit). 33 U.S.C. § 1319(a).

### *MS4s and the MS4 General Permit*

20. Municipal separate storm sewer systems, or MS4s, are municipal sewer systems that collect water from rainfall and runoff, and discharge the water into navigable waters without treatment.

21. Because an MS4 discharges pollutants into waters of the United States (and, additionally, within New York, to the waters of the State), a municipality owning or operating an MS4 must obtain coverage under, and comply with, a NPDES permit.

22. The applicable NPDES permit governing MS4s in the State of New York for the period from January 8, 2003, until January 8, 2008, was NYSDEC's MS4 General Permit GP-02-02, which was administratively extended until the MS4 General Permit GP-0-08-002 was issued on May 1, 2008, and expired on April 30, 2010. The applicable NPDES permit governing MS4s in the State of New York for the period from May 1, 2010, until April 30, 2015, was NYSDEC's MS4 General Permit GP-0-10-002 (the "2010 Permit"). The applicable NPDES permit governing MS4s in the State of New York

5

beginning May 1, 2015 until April 30, 2017, was NYSDEC's MS4 General Permit GP-0-15-003 (the "2015 Permit"). The 2015 Permit was administratively extended until the issuance of a permit renewal and is currently in force. MS4 operators become subject to the applicable permit when they submit a notice of intent to be so covered. Municipalities covered under the 2010 permit as of May 1, 2015, automatically became covered under the 2015 permit when they submitted their 2014 Annual Report, which was due in June 2015.

23. The 2010 and 2015 Permits authorize municipalities to discharge certain pollutants from their MS4s only if the municipalities comply with various requirements contained in the permits. One critical requirement of the Permits is that they prohibit illicit discharges *into* the MS4. An "illicit discharge," is "any discharge to an MS4 that is not composed entirely of stormwater, except discharges pursuant to a NPDES permit (other than the NPDES permit for discharges from the MS4) and discharges resulting from firefighting activities." 40 C.F.R. § 122.26(b)(2). Illicit discharges can include pollutants that affect water quality in the receiving waters, including raw sewage.

24. To prevent unpermitted discharges by the MS4, the MS4 General Permit requires the owner or operator of a small MS4 to develop, implement, and enforce a program to detect and eliminate illicit discharges into the MS4 and comply with related program and reporting requirements (collectively appearing at Part VII.A.3, subparts (a) through (m), and Part V.C of the MS4 General Permit, and collectively referred to herein as the "Illicit Discharge Detection and Elimination Program" or "IDDE Program").

25. Specifically, the IDDE Program requires MS4 operators to, among other things: (i) develop, implement, and enforce a program to detect and eliminate illicit discharges into the MS4; (ii) develop and maintain a map showing outfall locations, all surface waters receiving outfall discharges, and storm sewer sheds; (iii) field verify MS4

6

outfall locations; (iv) conduct an outfall reconnaissance inventory every five years; (v) map new outfalls as they are constructed or newly identified; (vi) prohibit illicit discharges into the MS4 and implement appropriate enforcement procedures and actions through a law, ordinance, or other regulatory mechanism; (vii) develop and implement a program to detect, address, and eliminate non-stormwater discharges; (viii) inform the public about the hazards associated with illegal discharge; (ix) address the categories of non-stormwater discharges; (x) develop, record, periodically assess, and modify, as needed, measurable goals; (xi) select and implement measures to reduce the amount of pollutants of concern in stormwater discharges; and (xii) report on program implementation in an annual report due to be filed by June 1 of each year.

### *Clean Water Act and State Law Enforcement Provisions*

26. The Administrator of the EPA may commence a civil action for appropriate relief when any person discharges pollutants into navigable waters without a permit or violates the terms or conditions of a NPDES permit, including a permit issued by a state authorized to administer the NPDES program. 33 U.S.C. § 1319(b).

27. The Commissioner of the NYSDEC may institute proceedings to compel compliance with Article 17, Titles 7 and 8 of the New York Environmental Conservation Law, including enforcement against noncompliance with SPDES permits. N.Y.E.C.L. §§ 71-1929(1) and 1931. Injunctive relief also is authorized by Section 71-1931 of the New York Environmental Conservation Law.

28. The Clean Water Act and the New York Environmental Conservation Law also contain penalty provisions that permit monetary recovery for violations.

29. As to United States, any person who violates any permit issued under Section 402 of the Clean Water Act, or any EPA order issued under 309(b) of the Clean Water Act,

7

is liable for civil penalties of up to $37,500 per day for violations occurring between January 12, 2009 and November 2, 2015, and up to $53,484 per day for violations occurring after November 2, 2015 and assessed on or after January 15, 2018. 33 U.S.C. § 1319(d); 28 U.S.C. § 2461; 31 U.S.C. § 3701; 40 C.F.R. Part 19; 8 Fed. Reg. 66644 (Nov. 6, 2013); 81 Fed. Reg. 43091 (July 7, 2016); and 83 Fed. Reg. 1190 (Jan. 10, 2018).

30. Under the New York Environmental Conservation Law, Northport is liable to New York for civil penalties of up to $37,500 per day for each violation. N.Y. E.C.L. § 71-1929.

## GENERAL ALLEGATIONS

### *Northport's Failure to Comply with its MS4 Permits*

31. Northport owns and operates an MS4 that comprises numerous catch basins in which stormwater is collected, connecting pipe segments, and 19 outfalls from which stormwater is discharged. Northport's outfalls discharge into Northport Harbor and Northport Bay and flow into the Long Island Sound, all of which are waters of the United States, as well as waters of New York State.

32. Northport's MS4 qualifies as a "small MS4" in an "urbanized area" under applicable regulations. Accordingly, the CWA, the N.Y.E.C.L., and corresponding regulations require Northport to obtain and maintain permit coverage for its MS4. *See* 40 C.F.R. § 122.26(b)(16); 40 C.F.R. § 122.32(a)(1); E.C.L. § 17-0808; 6 N.Y.C.R.R. § 750-1.4(b).

33. On January 8, 2003, the NYSDEC issued MS4 General Permit GP-02-02 for Stormwater Discharges from MS4s in accordance with its authority under Section 402 of the CWA, 33 U.S.C. § 1342.

34. On March 4, 2003, Northport submitted its Notice of Intent and its Storm Water Management Program ("SWMP") in order to gain coverage under the MS4 General Permit.

35. Accordingly, on March 25, 2003, Northport obtained coverage under the MS4 General Permit. The MS4 General Permit required Northport to develop, implement, and enforce a fully compliant SWMP that includes an IDDE Program by the scheduled expiration of the General Permit on January 8, 2008.

36. Despite that requirement, Northport failed to develop, implement and enforce its SWMP and IDDE Program by the deadline in the Permit.

*Northport's Failure to Comply with EPA's Administrative Orders*

**The 2011 Compliance Inspection and Administrative Order**

37. On June 20, 28, and 29 of 2011, EPA conducted a Compliance Evaluation Inspection ("CEI") of Northport's MS4 program. The CEI established that Northport failed to develop and implement its SWMP by January 8, 2008, as required by the MS4 General Permit.

38. On July 25, 2011, in response to the violations identified during the CEI, EPA issued a unilateral administrative order (the "2011 Administrative Order"). The 2011 Administrative Order required Northport to develop, implement and enforce a new SWMP by September 30, 2011, and to develop, implement and enforce an IDDE Program by November 30, 2011. Among other permit-required IDDE Program components, the 2011 Administrative Order specifically required Northport to develop and implement procedures for identifying and locating illicit discharges and procedures to eliminate identified illicit discharges.

39. On September 29, 2011, Northport submitted a deficient SWMP Plan. EPA documented the deficiencies in telephone calls, emails and a letter, requiring Northport to resubmit the plan.

40. On November 29, 2011, Northport submitted the IDDE Program to EPA, but it too failed to include all the required IDDE elements as outlined in the MS4 General Permit.

41. On December 6-7, 2011, EPA conducted sampling inspections in Northport which identified high fecal coliform counts, indicating the presence of illicit discharges, *i.e.*, raw sewage, to Northport's MS4.

### The 2012 Administrative Order

42. On March 7, 2012, EPA met with Northport to discuss, among other things, the sampling inspection results required by the 2011 Administrative Order, and the need for a Plan of Study to remediate illicit discharges.

43. After the March 2012 meeting, EPA issued an Administrative Order on Consent ("2012 Administrative Order"), which included a revised schedule for the remaining compliance deadlines, including deadlines that Northport had previously missed.

44. The new deadlines in the 2012 Administrative Order were developed with the input and agreement of Northport officials.

45. Among other things, the 2012 Administrative Order required Northport to submit the final Plan of Study by July 31, 2012. Northport failed to submit a Plan of Study by the July 31, 2012 deadline.

46. On September 25, 2012, Northport submitted a belated and incomplete Plan of Study, requiring further clarification and submissions by Northport before EPA could approve the Plan of Study. After several comments and discussions about the inadequacy of

Northport's submissions, on February 27, 2013, Northport submitted another Plan of Study, which was tentatively approved by EPA in a letter dated March 26, 2013. The Plan of Study was formally approved by EPA and NYSDEC in a letter dated April 30, 2013.

### The 2013 Administrative Order

47.     The 2012 Administrative Order also required that Northport submit a final Engineering Plan for the elimination of illicit discharges within 90 days of the approval of the Plan of Study.

48.     On June 17, 2013, EPA issued an updated Information Request and Administrative Compliance Order (the "2013 Administrative Order"). The 2013 Administrative Order memorialized a July 31, 2013 deadline for Northport to submit the Engineering Plan. Despite that Order, Northport did not provide the final Engineering Plan by July 31, 2013.

49.     On December 23, 2013, Northport submitted a final Engineering Plan that was sufficient, and which contained numerous deadlines and projects to be implemented, including storm sewer and sanitary sewer rehabilitation projects to eliminate identified illicit connections, as well as requirements to prioritize remaining outfalls and complete sampling at those outfalls in accordance with the Plan of Study.

50.     Northport did not complete the rehabilitation projects described in the final Engineering Plan by the original deadline of December 2014. Instead, it completed the rehabilitation projects on or about April 8, 2016, 15 months after the deadline. Furthermore, Northport did not prioritize its remaining outfalls and complete sampling at those outfalls in accordance with its Plan of Study, which was required by the Engineering Plan.

### *Illicit Discharges and Sources of Pathogens*

51. As a result of Northport's failure to comply with the EPA Administrative Orders and implement an IDDE Program in accordance with the MS4 Permit, there have been numerous occasions when the Northport's MS4 discharged illicit pollutants and sources of pathogens, including raw sewage, into waters of the United States and the State, specifically Northport Harbor.

52. In 2007 and 2008, Northport, through a contract with EcoTest Laboratories, Inc., conducted sampling for nitrogen, ammonia, enterococci, and fecal coliform, among other parameters, at various locations throughout Northport, including some MS4 outfalls. Several samples contained pollutants that exceeded New York Water Quality Standards and indicated that there were illicit discharges into Northport's MS4. Despite these findings, Northport failed to timely develop an IDDE Program to identify and eliminate illicit connections and other sources of pathogens into the MS4.

53. During the CEI on June 20, 28 and 29, 2011, EPA inspected Northport's outfalls and observed, *inter alia,* sewage in the stormwater outfalls, illicit private connections to the MS4, and dry weather flows indicating illicit connections and discharges.

54. During sampling inspections on December 6-7, 2011, EPA inspectors obtained further evidence of illicit discharges into Northport's MS4. The samples taken contained fecal coliform and total coliform levels that exceeding New York Water Quality Standards, one by as much as 1,000 times the Water Quality Standard for total coliform.

55. During a "dry weather" sampling inspection on December 6, 2011, EPA inspectors observed what appeared to be dry weather flow from Northport's MS4 outfall located at the end of Main Street into Northport Harbor. Such dry weather flow is indicative of illicit discharges into the MS4. A sample taken from this MS4 outfall contained fecal

coliforms, indicating that raw sewage was present, and was being discharged into Northport Harbor.

56. During the June 28-29, 2011 inspection, the EPA inspector smelled and visually observed sewage in the stormwater pipe upstream of Northport's outfall at #99 Bayview Avenue, which discharged to Northport Harbor. A sample taken from this outfall on December 7, 2011 contained fecal coliforms, indicating the presence of raw sewage, which was being discharged into Northport Harbor.

57. The sanitary sewage discharges discovered during these inspections were not permissible under Northport's MS4 General Permit.

58. Sampling results submitted by Northport in years subsequent to the EPA inspections also demonstrated sanitary sewage discharges that were not permissible under Northport's MS4 General Permit.

*Failure to Implement and Enforce an*
*Illicit Discharge Detection and Elimination Program*

59. The inspections and subsequent communications with Northport demonstrate that Northport was in noncompliance with its MS4 General Permit by failing to implement and enforce a comprehensive IDDE Program.

60. If Northport had been properly implementing and enforcing an IDDE Program during these times, it would have discovered and repaired the breakdowns that led to the illicit discharges, and these discharges would not have occurred.

61. Specifically, Northport failed to implement and enforce a program to detect and eliminate illicit discharges flowing into its MS4, in violation of Part VII.A.3.a of the MS4 General Permit.

62. Since January 8, 2008, Northport has failed to maintain a map showing all outfall locations, in violation of Part VII.A.3.b of the MS4 General Permit.

63. Northport failed to conduct an outfall reconnaissance inventory at all MS4 outfalls from January 8, 2008 to January 3, 2017, in violation of Parts VII.A.3.d of the MS4 General Permit.

64. Since January 8, 2008, Northport has failed to fully implement a program to detect and address non-stormwater discharges, in violation of Part VII.A.3.g of the MS4 General Permit.

65. Northport's illicit discharges into waters of the United States and the State resulted from its failure to implement and enforce an IDDE Program, in violation of the MS4 General Permit.

## FIRST CLAIM FOR RELIEF

### *Claim by the United States for Permit Violations*

66. The allegations in paragraphs 1 through 65 are re-alleged as though set forth fully herein.

67. Northport's operation of its MS4 from May 1, 2010, to April 30, 2015, was subject to the 2010 Permit. Its operation of the MS4 beginning May 1, 2015, is and continues to be subject to the 2015 Permit.

68. Both the 2010 and 2015 Permits require Northport to have in place a SWMP. As part of the SWMP, the Village was required to "implement and enforce a program to detect and eliminate illicit discharges" into the MS4. Illicit discharges include discharges of sanitary sewage. 40 C.F.R. § 122.26(b)(2).

69. From May 1, 2010 to April 30, 2015, Northport failed to comply with the IDDE Program provisions of the 2010 Permit, and from May 1, 2015 to present, it has failed to comply with the IDDE Program provisions of the 2015 Permit.

70. Northport is liable to the United States for civil penalties for each day of each violation of the 2010 and 2015 Permits occurring on or after the date five years prior to the filing of this action.

71. Unless enjoined by an order of the Court, the Village will continue to violate the IDDE Program requirements of the 2015 Permit.

## SECOND CLAIM FOR RELIEF

*Claim by the State of New York for Permit Violations*

72. The allegations in paragraphs 1 through 65 are re-alleged as though set forth fully herein.

73. Northport's operation of its MS4 from May 1, 2010, to April 30, 2015, was subject to the 2010 Permit. Its operation of the MS4 beginning May 1, 2015, is and continues to be subject to the 2015 Permit.

74. Both the 2010 and 2015 Permits require Northport to have in place a SWMP. As part of the SWMP, Northport was required to "implement and enforce a program to detect and eliminate illicit discharges" under Part VII.A.3.l of the MS4 General Permit.

75. From at least May 1, 2010, to April 30, 2015, Northport failed to comply with the IDDE Program provisions of the 2010 Permit, and from at least May 1, 2015 to present, it has failed to comply with the IDDE Program provisions of the 2015 Permit.

76. Northport is liable to New York and NYSDEC for civil penalties for each day of each violation of the 2010 and 2015 Permits occurring on or after three years prior to the filing of this action.

77. Unless enjoined by an order of the Court, Northport will continue to violate the IDDE Program requirements of the 2015 Permit.

### THIRD CLAIM FOR RELIEF

*Claim by the United States for
Violation of EPA Administrative Orders*

78. The allegations in paragraphs 1 through 65 are re-alleged as though set forth fully herein.

79. EPA issued the 2011, 2012 and 2013 Orders under its authority as provided by Sections 308 and 309(a) of the Clean Water Act to compel Northport to comply with the Clean Water Act and the 2010 and 2015 MS4 General Permits.

80. Northport violated the 2011, 2012 and 2013 Orders.

81. Northport is liable to the United States for civil penalties for each day of each violation of the 2013 Order occurring on or after the date five years prior to the filing of this action.

82. Unless enjoined by an order of the Court, Northport will continue to violate the 2013 Order.

### PRAYER FOR RELIEF

WHEREFORE, the United States, the State of New York, and NYSDEC respectfully request that this Court:

a. Enjoin Northport to implement and enforce an Illicit Discharge Detection and Elimination Program, as required by the 2015 Permit;

b. Enjoin Northport to cease discharging pollutants via its MS4 into waters of the United States and the State, except as authorized by the MS4 General Permit;

16

  c.  Enjoin Northport to comply with the terms of EPA's 2013 Administrative Order;

  d.  Order Northport to pay the United States a civil penalty not to exceed $37,500 per day for each violation of the 2010 and 2015 Permits and each violation of EPA's 2013 Administrative Order, for each day of violation January 12, 2009 and November 2, 2015, and $53,484 per day for each violation and illicit discharge that occurred after November 2, 2015 and assessed on or after January 15, 2018.

  e.  Order Northport to pay the State of New York a civil penalty of up to $37,500 per day for each day it violated the 2010 and 2015 Permits.

  f.  Award the United States and the State of New York their costs in this action; and

  g.  Grant such other and further relief as the interests of justice may require.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
*Attorney for the United States of America*

Dated: Brooklyn, New York
February 19, 2020         By:      *s/*
                                   DEBORAH B. ZWANY
                                   Senior Litigation Counsel
                                   271-A Cadman Plaza East
                                   Brooklyn, New York 11201
                                   Tel. No. (718) 254-6010
                                   Deborah.Zwany@usdoj.gov

Of Counsel:

KARA E. MURPHY
Assistant Regional Counsel
Water and General Law Branch
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007

LETITIA JAMES
Attorney General for the State of New York
*Attorney for the State of New York*

By:      *s/ Abigail Rosner*
         Abigail Rosner
         Assistant Attorney General
         28 Liberty Street
         19th Floor
         New York, New York 10005
         Tel. No. (212) 416-8922
         Fax No. (212) 416-6007
         Abigail.Rosner@ag.ny.gov